J-S67016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., MOTHER | : | |
| | : | |
| | : | No. 1790 EDA 2018 |

Appeal from the Decree Entered May 18, 2018
In the Court of Common Pleas of Wayne County Domestic Relations at
No(s):  2017-00030

| | | |
|---|---|---|
| IN RE: I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., MOTHER | : | |
| | : | |
| | : | No. 1791 EDA 2018 |

Appeal from the Decree Entered May 18, 2018
In the Court of Common Pleas of Wayne County Domestic Relations at
No(s):  2017-00031

BEFORE:   OTT, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 18, 2018**

J.S. (Mother) appeals the decrees granting the petitions of Wayne County Children and Youth Services (CYS) and involuntarily terminating her parental rights to her two minor sons, D.D., born in April 2008, and I.D., born in July 2009 (collectively, Children).  We affirm.

_____
*   Retired Senior Judge assigned to the Superior Court.

Children were born to Mother and J.D. (Father).[1] At all times relevant to this appeal, Mother and Father lived separately, and Mother was married to M.S. (Stepfather). Father was the subject of a protection from abuse order directing him to have no contact with Children.

Children were known to CYS and had long histories of fire-setting behaviors. In March 2016, Children were evaluated by the Center for Arson Research. The fire setter evaluation recommended that there be no fire starting materials in Mother and Stepfather's home, and that Mother and Stepfather, who were smokers, keep a single lighter on their person at all times. However, each time caseworkers visited the home, candles were burning and lighters were left on the table. *See* N.T., 4/18/18, at 9; Order of Adjudication, 5/31/16, at 1. On May 3, 2016, Mother and Stepfather disclosed that there were at least two fires set by Children since the March 2016 evaluation that had not been previously reported. *See* N.T., 4/18/18, at 9. On May 9, 2016, a second fire starter evaluation was conducted and Children were both recommended for residential placement.

On May 11, 2016, CYS filed applications for protective custody and shelter care. On May 13, 2016, CYS filed dependency petitions.

Children were adjudicated dependent on May 31, 2016. *See* Order of Adjudication, 5/31/16; *see also* N.T., 4/18/18, at 11. At that time, Mother's

_____

[1] We note that although Father did not appear at the termination hearing. However, he was represented by counsel at the hearing. Father has not appealed the order terminating his parental rights.

- 2 -

goals were to build and maintain an attachment to Children; participate in family therapy; be open and honest with the therapist and staff; follow any and all recommendations of the diagnostics or treatment plan; attend reasonable appointments; follow the schedule provided by CYS with regard to visitation; be available for visitation contact requests; provide adequate supervision of Children and maintain a structured home; lock up all fire-related items immediately; be a law-abiding citizen; and provide the agency with any changes in address or family circumstances within twenty-four hours. **See** N.T., 4/18/18, at 12-15; **see also** Pet. Ex. 1. D.D. was placed in a residential treatment facility, and I.D. was placed in therapeutic foster care. **Id.** at 25-26.

On August 9, 2016, Mother was charged with committing sexual offenses against Stepfather's relatives, who were minors.[2] The offenses were alleged to have been committed in 2013 and 2014.

Permanency review hearings were held in September 2016, December 2016, March 2017, August 2017, and October 2017. **Id.** at 14. During the pendency of this case, Mother was often minimally or non-compliant. **Id.** at 14-15. Between May 2016 and July 2017, she attended nine of twenty-nine visits. **Id.** at 15. In September 2016, she had no contact with CYS. In December 2016, she did not participate in treatment meetings or scheduled visits. **See** Permanency Review Order, 12/6/16, at 1. In March 2017, Mother

---

[2] Stepfather was a co-defendant.

reached out to her caseworker to express an interest in seeing Children, but did not provide a telephone number; nor was she participating in treatment meetings or scheduled visits. **See** Permanency Review Order, 3/7/17, at 1. In July 2017, Mother and Stepfather were found guilty of sexual offenses.[3] In August 2017, Mother was in moderate compliance, but was awaiting sentencing on criminal charges. **See** Permanency Review Order, 8/8/17, at 1.

Mother was sentenced in October 2017 to an aggregate term of eleven to forty years' incarceration. Additionally, she was designated as both a Tier III sex offender and a sexually violent predator.[4] **See** N.T., 4/18/18, at 17; **see also** Pet. Ex. 4 and 5. Although Mother was in moderate compliance with the family plan, CYS sought a finding of aggravated circumstances based on the convictions. **See** Permanency Review Order, 10/25/17, at 1.

_____

[3] **See** 18 Pa.C.S. §§ 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse). In full, Mother was convicted of involuntary deviate sexual intercourse, statutory sexual assault –11 years or older, two counts of indecent assault–complainant less than 13, two counts of indecent exposure, two counts of corruption of minors related to sexual offenses, and indecent assault. **See** 18 Pa.C.S. §§ 3123, 3122.1, 3127, 6301, 3126, respectively.

[4] Mother took an appeal from the criminal conviction. Mother's appellate counsel in the criminal case indicated an intent to file an **Anders**/**Santiago** brief, but subsequently failed to file a brief. **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). Mother's appeal was dismissed for the failure to file a brief on September 20, 2018. **See** 3494 EDA 2017, Order, 9/20/18, at 1. On October 15, 2017, counsel filed a certificate indicating that he informed Mother by mail of the dismissal of her criminal appeal.

On October 25, 2017, the trial court entered an order finding aggravated circumstances due to Mother's criminal convictions, which required her to register as a sex offender. **See** Aggravated Circumstances Order, 10/25/17, at 1. On November 27, 2017, CYS filed petitions seeking to involuntarily terminate the parental rights of Mother and Father pursuant to Section 2511(a)(1), (2), (5), (8), and (11).

The trial court convened hearings on the petitions to terminate parental rights on and May 18, 2018. Mother appeared, represented by counsel.[5] Children were represented by legal counsel, Michael Lehutsky, Esq., and a guardian *ad litem* (GAL), Leatrice Anderson, Esq.[6] Veronica Rohrbach, a

---

[5] As noted above, Father did not appear at the termination proceeding.

[6] Although not raised by Mother, we briefly address the representation provided to Children by Attorney Lehutsky. **See In re K.J.H.**, 180 A.3d 411, 412-14 (Pa. Super. 2018). Our Supreme Court, in **In re Adoption of L.B.M.**, 161 A.3d 172, 183 (Pa. 2017) (plurality), held that 23 Pa.C.S. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. **Id.** at 174. Since **L.B.M.**, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. **See In re Adoption of T.M.L.M.**, 184 A.3d 585, 587-91 (Pa. Super. 2018). The Pennsylvania Supreme Court has held that: (1) a GAL may serve as counsel where there is no conflict between the child's legal and best interests, and (2) there is no conflict between the child's best and legal interests if the child is non-communicative due to the child's young age. **See In re T.S.**, 192 A.3d 1080, 1092-93 (Pa. 2018).

Children, approximately ten and eight years old at the time of the hearing, were able to communicate their preferences. The trial court appointed Attorney Lehutsky as legal counsel for Children. Attorney Lehutsky was

caseworker, testified for CYS. Additionally, the dependency case records were admitted into evidence, along with exhibits from both CYS and Mother.

Ms. Rohrbach testified regarding the history of the case, and noted that Children want to remain with their mother, and have a very strong bond with her. *See* N.T., 4/18/18, at 23. However, she did not believe Children would be negatively impacted by termination. *Id.* at 24-25. At the time of the termination hearings, Children had been in care twenty-three months and were aware there was a possibility they would not be going home. *Id.* at 25. Children were aware Mother was in prison and the length of her sentence. *Id.* at 25. I.D.'s foster mother was interested in a permanent placement, and I.D. had developed a bond with her, and would like a permanent home. *Id.* at 27. D.D. wanted a family he could call his own. *Id.* at 30. Additionally, both Children were undergoing extensive trauma therapy, and D.D. and I.D. had recently disclosed to their therapists more details regarding the physical and

---

present at the hearings and participated in cross-examination, and stated Children's preferences to stay with Mother on the record.

However, Attorney Lehutsky focused most of his argument on Children's best interests and continues to argue their best interests before this Court. *See*, *e.g.*, *T.M.L.M.*, 184 A.3d at 590 (recognizing that counsel's duty to represent a child does not stop at the conclusion of the termination hearing); *see also T.S.*, 192 A.3d at 1092 (noting child's statutory right to appointed counsel is not subject to waiver). We remind counsel that he should have advocated for Children's legal preferences. *See T.M.L.M.*, 184 A.3d at 590-91. However, this error does not impede our review under the circumstances of this case and, accordingly, we need not remand.

sexual abuse they suffered in Mother's home.[7] *Id.* at 58-59. CYS believed it was in Children's best interests for Mother's parental rights to be terminated. *Id.*

Mother testified that she is currently incarcerated in a state correctional institution.[8] *See* N.T., 5/18/18, at 5-10. In addition to D.D. and I.D., Mother has five other children, one of whom lives with his biological father, the other four of whom live with Mother's mother-in-law and father-in-law. *Id.* at 22. Mother stated that she could participate in a program to gain contact visits with Children within a year. *Id.* at 18-19. Additionally, she testified that she could still be a parent to Children and call them every day twice a day if needed. *Id.* at 18. The last time she had contact with Children was July 2017, before her criminal trial. She has been incarcerated since her conviction. *Id.* However, Mother writes to Children two to three times a month and draws pictures for Children. *Id.* at 20. Mother introduced a number of certificates for programs and religious classes she had completed while incarcerated. *Id.* at 26-27.

Mother could parent them "on the side" by telephone. *Id.* at 29-30. Mother asserted that her sister in Philadelphia could be a resource for Children. *Id.* She also identified her mother and Stepfather's parents as possible resources. However, maternal grandmother has an indicated report of child

---

[7] The record does not provide further details regarding this abuse.

[8] Mother was brought to Wayne County Correctional Facility for the purposes of the hearing.

- 7 -

abuse against her that was under administrative appeal at the time of the hearing, and Mother acknowledged that Stepfather's parents would need assistance to find a larger home to accommodate Children. *Id.* at 44.

At the conclusion of the hearing, the trial court found that CYS had met its burden by clear and convincing evidence and terminated Mother's parental rights under Sections 2511(a)(1), (2), (5), (8), and (11). Mother filed a timely notice of appeal and in response to the trial court's order, subsequently filed a concise statement of errors complained of on appeal. The trial court filed a responsive opinion.

Mother presents the following issue for our review: "Whether the [t]rial [c]ourt abused its discretion in terminating [Mother's] parental rights?" *See* Mother's Brief at 5.

Mother raises several interconnected arguments challenging the termination of her parental rights under Section 2511(a)(11). First, she contends that the termination orders are premature due to her pending appeal of her July 2017 criminal convictions. *See* Mother's Brief at 13-16. Mother notes that the grounds upon which termination was based are "somewhat tied into the fact" that Mother is currently incarcerated. *Id.* Second, Mother argues that even if her convictions are upheld, she can provide meaningful but distant parental care for Children with the assistance of family members. *Id.* at 15.

We review cases involving the termination of parental rights according to the following standards:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). To affirm the trial court, we need only agree with any one of the subsections of 2511(a), as well as subsection (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on Subsection (a)(11) and (b).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The relevant sections of 23 Pa.C.S. § 2511 provide that:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) [42 Pa.C.S. §§ 9799.10 *et seq.*, 9799.51 *et seq.*] or to register with a sexual offender registry in another jurisdiction or foreign country.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We first address the trial court's findings under 23 Pa.C.S. § 2511(a)(11). Mother's criminal convictions require her to submit to lifetime registration as a Tier III sex offender. **See** 42 Pa.C.S. § 9799.14(d)(3)-(4); 42 Pa.C.S. § 9799.15(a)(3). Mother admitted that she had been convicted of these crimes, and evidence of her convictions was also admitted into evidence at the time of the hearing. **See** N.T., 5/18/18, at 5-10. Mother acknowledged that, upon her eventual release from prison, she will be required to submit to lifetime registration. **Id.** Mother does not challenge the propriety of the trial

court's findings under Section 2511(a)(11), or aver that CYS did not present sufficient evidence that she falls into this category, but only argues that the termination petition should have been held in abeyance until the conclusion of her appeal. She cites no authority in support of this position, and we have found none. Accordingly, her argument is unavailing and we discern no error in the trial court's finding that CYS had met its burden by clear and convincing evidence that Section 2511(a)(11) applied.[9]  **T.S.M.**, 71 A.3d at 267.

---

[9] We add that our review also compels us to agree that with the trial court that termination of Mother's parental rights was proper under Section 2511(a)(2).

Section 2511(a)(2) requires proof of "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied."  **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation omitted).  Section 2511(a)(2) emphasizes "the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. . . . This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it."  **Id.** (citation and emphasis omitted).  Moreover:

> incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

**In re Adoption of S.P.**, 616 Pa. 309, 332, 47 A.3d 817, 830 (Pa. 2012).

- 11 -

We turn next to the trial court's findings under Section 2511(b). We note that Mother makes no effort to argue that the trial court abused its discretion with regard to this section or, indeed, any concrete argument regarding the needs and welfare of Children. Accordingly, she risks waiver of the issue. *See In re Adoption of R.K.Y.*, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address subsection 2511(b) where the appellant did not make an argument concerning that subsection). *But see In re C.L.G.*, 956 A.2d 999, 1010 (Pa. Super. 2008) (*en banc*). Even if she did not waive the issue, however, her arguments would be unavailing.

In the context of a Section 2511(b) analysis, "the court must consider whether the child's needs and welfare will be met by termination[,] whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Adoption of K.J.*, 936 A.2d 1128, 1134 (Pa. Super. 2007) (citations omitted). The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Z.P.*, 994 A.2d at

---

Mother asserts that she "has attempted—and believes that she will be capable going forward—to provide some parental governance and support to remediate some of her admitted parental incapacity due to her incarceration . . . ." Mother's Brief at 13-14. As noted by the trial court, however, in addition to Mother's current incarceration, Mother "failed to perform parental duties for at least two years and, even before she was incarcerated, demonstrated a lack of capacity to perform parental duties, an inability to handle [C]hildren's special needs, and an inability to keep the Children and others around them safe." Trial Court Op., 6/19/18, at 7-8. Our review reveals no basis to disturb the trial court's conclusion as to Section 2511(a)(2).

1121. Ultimately, the concern is the needs and welfare of a child. *Id.* Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008).

> We have noted that
>
> > [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the **intangible** dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)) (emphasis in original).

In considering the affection which a child may have for his or her natural parents, this Court has stated the following:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [the child's] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citations and quotation marks omitted).

Here, there was evidence presented that Children have a bond with Mother, and would prefer to remain with her if possible. However, Mother, even if released at her minimum sentence date, will be incarcerated until Children are adults. Children have been in care for two years, and both require extensive therapy in order to achieve stability and permanency. Ms. Rohrbach, Children's caseworker, concluded that severing the bond with Mother would not harm Children and that such a severance would best serve their needs and welfare.

The trial court thoroughly and aptly observed:

[w]ith respect to the bond effects and needs and welfare analyses required by [Subsection (b)], it was and remains clear to us that the best interests and welfare of the Children require that Mother's parental rights be terminated. It appears that Mother and the Children are bonded. However, given the history of this case, Mother's sex offense convictions and registration obligation, the Children's special needs, and the Children's own abuse that is just now coming to light, the parent-child bond is not a healthy one. Considering all relevant facts and circumstances, we found that maintaining the unhealthy bond would be contrary to the needs, welfare, and best interests of the Children and that the benefits of severing the bond far outweighed any adverse impacts that might be felt as a result of the severance.

We further found that severing the bond would have the salutary effect of clearing the way for the adoption of both boys, which is and has been the unappealed goal of the underlying dependency cases. This is especially significant as to I.D. who has developed a strong bond with his foster mother who desires to adopt him. As to this relationship, we found and continue to believe that severing the bond between I.D. and his foster Mother would cause I.D. severe harm. I.D. deserves and has the right of finality and

permanency in his life, and with an adoptive resource readily available there is no reason why that right should be withheld from him.

D.D. is not in a pre-adopt[ive] home.  D.D. has more behavioral issues than I.D.  This has caused him to be placed in congregate care, a placement that will hopefully change soon.  At the TPR hearing, evidence was presented that interaction with Mother triggers D.D.'s behavioral issues and causes him to regress.  D.D. deserves the opportunity to heal and achieve a point in his life where permanency is made available to him and he can find a forever home.  With Mother in the picture, this goal would likely be unachievable.

The Children need and deserve the permanency, stability, love, support, and parental care that the law demands and that is the natural right of all children.  Their needs have not been met by Mother.  Rather, others have been providing parenting and care for the Children while Mother has not.  Further, Mother will be incarcerated until after the Children become adults.  Nothing in the record even remotely suggests that Mother will be able to meet the Children's needs in the future.  Given all relevant circumstances, we found and still believe that the Children's lives simply could not and should not be put on hold based on Mother's longshot hopes that her criminal convictions will be overturned or that, at some point in the future when Mother is released from prison after both boys become adults, Mother will summon the ability to handle the responsibility of parenting.  Even if Mother was not incarcerated, the facts presented show that the environment Mother would have the Children in is one that is not suitable and would raise severe concerns for the Children's safety and well-being.  Simply, under the facts and circumstances of this case, we found that termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of the children and promote the children's best interests.  We still do.

*See* Trial Ct. Op., 7/19/18, at 10-12.  We find no error or abuse of discretion in this analysis.

Accordingly, we conclude that the clear and convincing evidence of record supports the termination of Mother's parental rights under Section

2511(a)(11) as well as the Section 2511(b) findings that despite the bond between Mother and Children, termination would best serve Children's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/18